## JULIA K. OLMSTEAD vs. GEORGE E. OLMSTEAD.

### July 19, 1889.

**Setting Aside Fraudulent Divorce.**—The district court may vacate a decree of divorce, upon a summary application seasonably made, for fraudulent practices in obtaining it.

Appeal by defendant from an order of the district court for Hennepin county, *Rea*, J., presiding, setting aside, on plaintiff's application, the judgment of absolute divorce theretofore entered in this action.

*Hammons & Hammons*, for appellant.

*Fred B. Dodge* and *J. H. Perry*, for respondent.

VANDERBURGH, J. · It is a well-settled principle of jurisprudence that a court has power, upon due proceedings had, to vacate its judgments and decrees for fraudulent practices in obtaining them. *Edson* v. *Edson*, 108 Mass. 590. And this may be done upon a summary application like the present. *Johnson* v. *Coleman*, 23 Wis. 452; *Chauncey* v. *Wass*, 35 Minn. 1, 38, (30 N. W. Rep. 844.) In this case a decree of divorce was entered in due form, but subsequently set aside on plaintiff's application, by the judge before whom the case was tried, and who had directed the entry thereof. The evidence upon such application was submitted upon affidavits and counter-affidavits, and so clearly supports the decision of the judge in vacating the judgment that this court will not disturb the order appealed from. *First Nat. Bank* v. *Randall*, 38 Minn. 382, (37 N. W. Rep. 799.) It appears that the parties had formerly lived in Aberdeen,

Dakota. Early in the year 1888 the defendant engaged in the saloon business in Minneapolis against the wishes of his wife, the plaintiff, who refused to come and reside with him unless he would abandon it, which he declined to do, and she has continued to reside at Aberdeen with her father, though she made him a short visit the last part of April. The evidence tends to show that the divorce proceedings were devised and prosecuted by him; that attorneys were employed by him, and a complaint prepared under his direction, and without her knowledge or authority, alleging his own adultery, which he denied in his verified answer, which was served immediately upon the filing of the complaint; and within four days thereafter, viz., May 12th, the decree was obtained. She was not present at the trial, knew nothing of it, nor had she any knowledge or intimation of any of the proceedings, save that he came to Aberdeen, where she was, on May 7th, sent for her for a private interview at a place which turned out to be the office of an attorney employed and paid by him, in the course of which he notified her that he did not intend to live with her any more, and of his desire for a divorce on the ground of his adultery, of which she had never heard and had no knowledge, except from his statements then made; that he insisted upon her signing a paper in divorce proceedings, which he had with him, and which she now believes to have been the verification to the complaint, and which, while laboring under much excitement and mental distress, she was finally prevailed upon to sign; that it was not read to her, nor did she know its contents; and she had no further knowledge of the proceedings until she heard of the decree on the 25th of June, when she took proceedings to set aside the same. The evidence in plaintiff's behalf is such as the court might receive and act upon, and fully justifies the decision in the case. It could not be tolerated that a party, anxious to secure a divorce, should bring about a judicial separation by an action against himself, and commenced and managed by himself, in his own interest, using his wife as a mere figure-head,—a fraud alike upon her and the court. The state is an interested party in proceedings for divorce, and the court will not lend its sanction to prosecutions instituted fraudulently or collusively, or conducted in bad faith.

Within 10 days after the entry of the judgment the defendant, it seems, married another woman. But the parties who in such cases make haste to contract another marriage take the risk of the consequences of an appeal or other proceedings to vacate the judgment. And this feature of the case suggests a most excellent reason why the legislature should prohibit the guilty party, at least, from marrying again for a year, or such time as might be deemed reasonable, after the judgment in a divorce case is entered.

Order affirmed.