## DONALD M. CAHALEY v. CORINNE E. CAHALEY.[1]

December 10, 1943.

No. 33,556.

*Neil Hughes* and *S. Paul Skahen,* for appellant.
*Guy W. Kimball,* for respondent.

YOUNGDAHL, JUSTICE.

This appeal is from an order denying a motion to vacate a default judgment in a divorce action and permit defendant to answer. It appears that a former action for divorce was instituted by plaintiff in Hennepin county in February 1942.. Defendant appeared and answered. Shortly thereafter plaintiff dismissed the action and left the state for a period of several months. Upon his return, the present action was commenced in Ramsey county. Summons was personally served on defendant on January 11, 1943. No answer having been interposed, the cause was placed on the default calendar on February 15. On February 18 plaintiff filed an affidavit of no answer, together with an affidavit advising the court that he

[1]Reported in 12 N. W. (2d) 182.

was a member of the United States Naval Reserve, had been recalled to active duty to report on February 20, and requested that the cause be advanced on the calendar. The court ordered the case advanced for immediate trial and on February 18 heard the matter. On said date plaintiff was granted a decree of divorce.

On February 25 defendant moved to vacate the judgment and for permission to answer. In support thereof, she filed affidavits by herself, her counsel, and his secretary, together with a proposed answer. These affidavits disclose that plaintiff's counsel communicated with defendant by letter regarding the proposed divorce action and that he was then advised by her attorney that she intended to contest the proceedings; that immediately after she was served with summons and complaint she discussed her proposed answer with her attorney, who subsequently called plaintiff's counsel and arranged for an extension of time in which to answer; that, pursuant to their agreement, defendant's counsel forwarded her verified answer to plaintiff's attorney on February 18. On February 20 her proposed answer was returned, together with a copy of the default divorce decree. Defendant's proposed answer, attached to and made a part of her motion to vacate the judgment, generally denies all allegations in the complaint, alleges misconduct on plaintiff's part, and asks for separate maintenance.

In reply to defendant's motion to vacate the judgment, plaintiff filed an affidavit of counsel in which it is stated that telephone conversations were had with defendant's attorney regarding the divorce action; that during one conversation on February 5 he agreed to give defendant's attorney an extension of time in which to answer of a couple of days until the first of the week of February 7; that on February 15 plaintiff's superior officer at the recruiting station called him to ascertain whether the matter might be disposed of immediately, since it was necessary that plaintiff leave shortly for active duty; that in pursuance of such request and since an answer had not been interposed according to the terms of the extension agreement, he gave the court "all the facts in the matter," with the result that it was advanced on the calendar and heard as a default.

Defendant assigns as error the trial court's refusal to vacate the judgment and permit her to answer. She asserts that, through no fault of her own, she has been denied her day in court; that such denial, under the facts herein, amounts to a fraud upon the administration of justice. Plaintiff contends that at most there is a showing of excusable neglect, which is not a ground to vacate a default judgment in a divorce action, and that the court's denial of defendant's motion was proper.

■ Minn. St. 1941, §§ 543.13, 544.32 (Mason St. 1927, §§ 9236, 9283), which permits, upon certain grounds and conditions therein specified, a defense to be interposed in an action where judgment has been entered by default, does not apply to divorce actions. Wilhelm v. Wilhelm, 201 Minn. 462, 276 N. W. 804; Laird v. Laird, 149 Minn. 104, 182 N. W. 955. Plaintiff asserts that because divorce cases are specifically excluded from these provisions defendant is in no position to claim relief from the default judgment. The exclusion of divorce actions, however, from those provisions of the statute in no way affects the inherent power of the court to grant relief to a party who has been denied an opportunity to defend in a divorce action under such circumstances as amount to a fraud on the court and the administration of justice. Scribner v. Scribner, 93 Minn. 195, 101 N. W. 163; Young v. Young, 17 Minn. 153 (181), and Wilhelm v. Wilhelm, 201 Minn. 462, 276 N. W. 804, *supra*. By these exclusionary provisions, the legislature has indicated an intention to place divorce actions in a different class from other civil actions, for the reason that second marriages may occur and the rights of children thereof be affected, and because of other considerations peculiarly incident to divorce cases. It is important to society, as represented by the state, that the marital status be preserved and the rights of children protected. Therefore the state is an interested party in a divorce action. The intention to consider divorce cases as a special class has also been indicated by certain procedure that applies particularly to those actions as distinguished from other civil actions, such as the requirement for personal service; allowing 30 days in which to answer instead of 20 as in other

civil actions; and the requirement of corroborating evidence in default cases. *Id.* §§ 518.11, 518.12, 518.28 (§§ 8590, 8591, 9905).

The courts, too, have always exercised a control over the marriage relation and have manifested a concern that the home be preserved wherever possible. In Young v. Young, *supra,* this court said (17 Minn. 159 [186]) :

"The proper regulation and control of the marriage relation is of so much importance to society, the well-being of the community is so far involved in the permanence of this relation, that the state, through its courts, *exercises a peculiar guardianship over marriage and divorce.* Society, as represented by the state, has an interest in maintaining the rules which have been prescribed by the proper authority concerning marriages and divorces, which interest it is the duty of the courts to protect." (Italics supplied.)

From the record, it is clear that to deny defendant the right to answer will result in a fraud upon her and the administration of justice. Laches cannot be asserted against her. She has at all times indicated a desire to interpose a defense to the action. In the first suit she served an answer asking for separate maintenance and claiming misconduct on plaintiff's part. She was granted a temporary allowance by the court. The action was then dismissed by plaintiff. When he commenced the present action, upon substantially the same grounds, defendant promptly consulted counsel, requesting that an answer be interposed alleging misconduct on plaintiff's part and seeking separate maintenance. She had a right to assume that the answer would be served in time and her rights protected. There is nothing in the record to indicate that at any time she had changed her plans with respect to contesting the divorce.

The summons and complaint were served on defendant on January 11, 1943. The time in which to answer expired on February 10. It is undisputed that defendant's attorney called counsel on the telephone several days before and asked for an extension. There is a question whether this conversation took place on February 5

or 6. That is immaterial. In any event, four or five days before the expiration date, defendant's attorney informed plaintiff's attorney that defendant intended to contest the action and interpose an answer; that counsel for defendant was busy in court at that time and needed additional time to prepare the answer. Plaintiff agrees that a couple of days' extension was granted but emphatically asserts that it was a couple of days from February 5 and contends that the agreement was definitely only for an extension until the first of the week of February 7. This claim, in our opinion, is not reasonable. Since defendant had until February 10 to answer without asking for an extension of time, the claim that her attorney was only asking for an extension to the first of the week of February 7 is not well founded. Counsel would then be getting only that which he already had under the law, and there would be no reasonable explanation for his taking the trouble to request additional time. If it may be assumed that a couple of days' extension was granted from February 10 and that a "couple of days" technically meant two days, defendant's attorney would have had at least until February 12 or 13 to answer. The answer was verified on February 16 and was in the mail on February 18. At most, defendant would be five days in default. But the expression "couple of days" should not be given a strained and technical meaning when considered in connection with an agreement between attorneys for an extension of time, but rather a liberal construction. Moreover, since a definite date was not fixed and plaintiff's attorney was apprised of the fact that an answer would be forthcoming, he had an obligation of professional courtesy to communicate with defendant's attorney before a default judgment was entered. In saying this we do not condone the conduct of counsel for defendant in failing to serve the answer promptly after it was verified. The record shows that it was left in his office for two days before mailing it to plaintiff's counsel. Defendant, however, should not be made to suffer because of misunderstanding of counsel. At the time the case was proved as a default, plaintiff's attorney stated to the court that he did not know "what his [defendant's attorney]

present plans are." Where, as here, it appears that a party intends to answer in a divorce action, we feel that judgment in default should not be entered without ascertaining whether that party has changed his plans for contesting the case. A telephone call to defendant's counsel on the day the case was proved would have brought information that an answer had been verified and was in the mail. Because the state is an interested party and the court's "guardianship over marriage and divorce" (17 Minn. 159 [186]), care should be taken that a party is not deprived of his right to defend, particularly when he has acted diligently and with dispatch to protect his rights. Denying defendant the right to answer under the circumstances in the case at bar is in effect a fraud upon her and the administration of justice.

"In an action for divorce, any course of action by the plaintiff which is intended to and does prevent the defendant from setting up and establishing a defense to the action is a fraud upon the administration of justice, as well as upon the defendant, for which the judgment thereby procured will be set aside." Young v. Young, 17 Minn. 153 (181), *supra*.

Attorneys have sufficient control over litigation without consulting their clients to make agreements respecting procedure which do not affect the substantive rights of the parties. It is imperative, therefore, that counsel act with the utmost good faith in such matters, to the end that all substantive rights of the client be fully protected. If an agreement between attorneys for an extension of time has been made which is indefinite in its terms, such an understanding should not be construed by counsel technically or strictly in the taking of a default judgment so as to deprive a party unjustly of his rights, but rather in the spirit of professional courtesy and mutual helpfulness. This spirit should be characteristic of all dealings between members of the bar.

Defendant has been seriously prejudiced. Her substantive right of defense in a divorce action has been swept away, not through any fault of her own, but because of a dispute between counsel as

to the terms of an agreement for an extension of time in which to answer. To suggest that the court has not the power under these circumstances to vacate the judgment and permit an answer is a denial of the court's inherent power to administer justice and of its guardianship over marriage and divorce.

Reversed.

MR. JUSTICE LORING, absent because of accidental injuries, took no part in the consideration or decision of this case.